## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MICHAEL C. ROSS,**

**Petitioner,**

v.                                          **CASE NO. 24-3031-JWL**

**DON LANGFORD,**

**Respondent.**

**MEMORANDUM AND ORDER**

This matter is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Michael C. Ross, who is a state prisoner incarcerated at Ellsworth Correctional Facility in Ellsworth, Kansas. This matter comes now before the Court on Petitioner's response (Doc. 31) to the Court's memorandum and order to show cause (MOSC) issued on September 19, 2024 (Doc. 30) regarding the apparent anticipatory procedural default barring consideration of Grounds One, Three, and Four. The MOSC also dismissed Ground Eight without prejudice for failure to allege specific facts supporting Petitioner's claim of ineffective assistance of trial counsel. *Id.* at 1, 3-4. The Court has carefully considered Petitioner's arguments regarding anticipatory procedural default and, as explained below, will dismiss Grounds One, Three, and Four of this matter. The Court will direct Respondent to file an answer to the remaining claims in Grounds Two, Five, Six, Seven, and Nine.

**Background**

In March 2017, a jury in Sedgwick County, Kansas convicted Petitioner of felony murder, "second-degree murder as a lesser included offense of premeditated murder," and abuse of a child. (*See* Doc. 29, p. 1); *State v. Ross*, 310 Kan. 216, 220 (2019) (*Ross I*). The state district court

1

sentenced him to "life in prison with no chance of parole for 25 years for the felony-murder conviction and 55 months in prison for the abuse of a child conviction, to run consecutive." *Ross I*, 310 Kan. at 220*. Petitioner pursued a direct appeal and, in July 2019, the Kansas Supreme Court (KSC) affirmed his convictions. *Id.* at 216.

Petitioner then filed a motion in state court seeking state habeas corpus relief under K.S.A. 60-1507. The state district court summarily denied relief and Petitioner appealed. (Doc. 29, p. 3); *see also Ross v. State*, 2022 WL 17544331 (Kan. Ct. App. Dec. 9, 2022) (unpublished) (*Ross II*), *rev. denied* Aug. 5, 2023. The Kansas Court of Appeals (KCOA) affirmed the denial in an opinion issued December 9, 2022, and the KSC denied Petitioner's petition for review on August 25, 2023. *Ross II*, 2022 WL 17544331, *1. On February 28, 2024, Petitioner filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court. (Doc. 1.) He filed the currently operative second amended petition on September 13, 2024; it asserts nine grounds for relief. (Doc. 29.)

### Anticipatory Procedural Default

Upon conducting the required preliminary review of the second amended petition, the Court held that Ground Eight should be dismissed without prejudice because, although Ground Eight alleged ineffective assistance of trial counsel, Petitioner did not "identify specific instances or events on which Petitioner bases his claim in Ground Eight." (Doc. 30, p. 4.) The Court also concluded that, for the purposes of the initial review, Grounds Two, Five, Six, Seven and Nine appear exhausted, although it emphasized that "this preliminary conclusion will not bar Respondent from raising in his answer the defense of failure to exhaust if this matter proceeds to the point at which Respondent is directed to file an answer to the petition." *Id.* at 5.

With respect to Grounds One, Three, and Four, however, the Court found that Petitioner did not fully present the federal constitutional arguments therein to the state appellate courts. *Id.*

at 6-9. Thus, they appeared unexhausted. Generally, a federal habeas court faced with unexhausted claims should dismiss the case before it so that the petitioner can return to state court and exhaust his claims. *Id.* at 9. The MOSC explained that there does not appear to be any avenue by which Petitioner could now raise his unexhausted claims in state court, so the claims are deemed barred by anticipatory procedural default and the Court cannot consider their merits. *Id.* at 9-10.

The MOSC then set forth the ways in which Petitioner can overcome that bar: (1) By showing cause for his failure to raise the constitutional claims to the state courts at the proper time and showing actual prejudice from the alleged federal constitutional violation; or (2) By showing that the failure to consider the merits of the claims will result in a fundamental miscarriage of justice. *Id.* at 11-14. The Court granted Petitioner time in which to show cause why Grounds One, Three, and Four should be considered on their merits. *Id.* at 11-15. Petitioner timely filed his response on October 1, 2024. (Doc. 31.) Liberally construing the pro se response, Petitioner argues that both exceptions to the anticipatory procedural default bar apply.

Petitioner contends that ineffective assistance of trial counsel led to the procedural default. *Id.* at 3-4, 7. As explained in the MOSC, to use ineffective assistance of counsel as the "cause" to overcome procedural default, Petitioner must have argued to the state courts that counsel was ineffective for failing to raise the constitutional claim he now makes in his federal habeas petition. (Doc. 30, p. 10.) Although it is not clear from the information now before this Court whether Petitioner included such arguments when he raised ineffective assistance of counsel claims to the state courts, it is clear that the state courts rejected Petitioner's claims of ineffective assistance of counsel. *See id.* at 11. Thus, under the applicable standard of review, to use ineffective assistance of counsel as "cause," Petitioner must show that the state court's decision rejecting his ineffective assistance claim was "contrary to, or involved an unreasonable application of, clearly established

Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 12 (quoting 28 U.S.C. § 2254(d)(1) and (2)).

Even liberally construing the response to the MOSC, Petitioner does not make either of these arguments. Rather, he restates his claims that counsel was ineffective and he emphasizes the strength of his underlying claims of other federal constitutional violations. (Doc. 31, p. 1-4.) He also asserts that his criminal prosecution "was planned" and that the state district judge had a conflict of interest. *Id.* at 1-3. Even assuming that all of the assertions are true, they do not show the cause and prejudice required to overcome the bar created by anticipatory procedural default.

Petitioner also asserts the fundamental miscarriage of justice exception to the bar caused by anticipatory procedural default. As explained in the MOSC, to receive the benefit of this exception, Petitioner "must show that 'in light of new evidence, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."'" (Doc. 30, p. 14 (quoting *House v. Bell*, 547 U.S. 518, 536-37 (2006), which quoted *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).) Petitioner is not required to conclusively exonerate himself, but he must demonstrate 'that more likely than not any reasonable juror would have reasonable doubt'" about his guilt if the new evidence been presented. *See Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *House*, 547 U.S. at 538, 553).

The KSC opinion in Petitioner's direct appeal reflects that the charges against Petitioner arose out of the death of a 17-month-old child, G.H., from injuries she sustained while Petitioner was the only adult in their home. *Ross I*, 310 Kan. at 216-17. The only other person home at the time was another child, S.T., who was 4 years old. *Id.* Paramedics called to the home found G.H. unresponsive and they took G.H. to a hospital, where she received emergency care but was declared brain dead 3 days later. *Id.* at 217-18. Petitioner "offered a number of different

explanations for G.H.'s injuries" and at trial, "[t]he State focused its case on the severity of G.H.'s injuries and the inconsistency of Ross' proffered explanations for those injuries." *Id.* at 219.

The State introduced into evidence "multiple calls" Petitioner made from jail "to his own mother featuring different accounts" and it presented testimony from a "one-time jail cellmate" who testified about four different accounts Petitioner gave him of the events that led to G.H.'s injuries. *Id.* at 218-19. Petitioner testified at trial and related a different version of the events. *Id.* at 218-19. The State also presented testimony from two doctors who treated G.H. at the hospital. One, a pediatric intensivist, testified that retinal hemorrhages such as G.H. had "'are usually caused by some kind of violent shaking event where the head is shaken and goes in multiple directions.'" *Id.* at 219.

Petitioner first argues that trial counsel was ineffective for failing to call an independent medical expert to testify at trial. (Doc. 31, p. 3.) He contends that an independent medical expert would have challenged the State's medical expert's "arbitrary assertions that Petitioner's child suffered injuries consistent with shak[en] baby syndrome." *Id.* Petitioner asserts that G.H.'s brain stem was still attached and if she had been shaken hard enough to cause some of the injuries the doctors testified about at trial, she would have had more injuries and her brain stem would have detached. *Id.*; *see also Ross I*, 310 Kan. at 217-19. The Court will liberally construe this argument to identify as new, reliable evidence the expected testimony of an independent medical expert.

In describing the circumstances that led to the G.H.'s injuries, Petitioner also provides "new evidence" in the form of previously undisclosed details about those circumstances, including that he slipped and fell while holding G.H. (Doc. 31, p. 3-4.) Finally, Petitioner identifies as new evidence a statement by S.T., who told a case worker and a detective that "Daddy didn't do anything to [G.H.]. No one did anything to [G.H.]." *Id.* at 3.

"To be 'new,' the evidence need only be evidence that was not considered by the fact-finder in the original proceedings." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (citing *Fontenot v. Crow*, 4 F.4th 982, 1031-33 (10th Cir. July 13, 2021)). Under this definition, the anticipated testimony from an independent medical expert, the new details about the events, and S.T.'s statement are new evidence. Therefore, the Court must consider whether the evidence is reliable. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013) (quoting *Schlup*, 513 U.S. at 332, for the statement that "'[a] court may consider how . . . the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]'").

The Court finds that none of the proffered new evidence is reliable evidence. Petitioner's statement regarding the new details of the events leading to G.H.'s injuries is not made upon penalty of perjury or oath or affirmation, which undermines its reliability. *See Blacklock v. Schnurr*, No. 23-3253-JWL (D. Kan. Jan. 31, 2024) (unpublished memorandum and order) (finding unsworn affidavit unreliable). Similarly, Petitioner has provided no details regarding the specific circumstances of 4-year-old S.T.'s statement, nor has he identified a medical expert who would testify about the alleged importance of whether G.H.'s brain stem was attached. *Scott v. Bridges*, 2023 WL 5016642, *11 (E.D. Okla. Aug. 7, 2023) (unpublished opinion and order) (finding unreliable an unsworn letter from the petitioner's son and documents referred to but not presented); *Gutierrez v. Patton*, 2014 WL 6603423, *3-4 (W.D. Okla. Nov. 19, 2014) (unpublished order adopting report and recommendation) (finding unreliable and not credible a statement that purportedly exonerated the petitioner but was not made upon penalty of perjury or oath or affirmation).

In any event, the Court considers the effect on a reasonable juror of considering, *in addition to the evidence presented at trial*, another variation of the events that injured G.H., four-year-old

6

S.T.'s statement that "Daddy didn't do anything to [G.H.]," and expert medical testimony that injuries of the sort described by a doctor who examined G.H. would have left G.H.'s brain stem detached. The Court finds it unlikely that a reasonable juror, even presented with all of this evidence, would be unable to find Petitioner guilty beyond a reasonable doubt of felony murder and abuse of a child. Thus, the Court is not persuaded that Petitioner is entitled to an exception to the general rule against considering the merits of claims subject to an anticipatory procedural bar. As noted in the MOSC, "[t]his exception . . . is a markedly narrow one, implicated only in 'extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (Doc. 30, p. 14 (quoting *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007).) Petitioner has not shown that he is entitled to the exception.

Accordingly, Grounds One, Three, and Four will be dismissed with prejudice as barred by anticipatory procedural default and the Court will direct Respondent to file an answer showing cause why the writ of habeas corpus should not be granted on the basis of the arguments in Grounds Two, Five, Six, Seven, and Nine. As previously noted, Ground Eight was dismissed without prejudice in the MOSC.

The Court has completed reviewing the petition as required by Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts. The Court finds that:

1. Petitioner is presently a prisoner in the custody of the State of Kansas; and

2. Petitioner demands his release from such custody, and as grounds therefore alleges that he is being deprived of his liberty in violation of his rights under the Constitution of the United States, and he claims that he has exhausted all remedies afforded by the courts of the State of Kansas with respect to the arguments made in Grounds Two, Five, Six, Seven, and Nine.

**IT IS THEREFORE ORDERED**

1. That Grounds One, Three, and Four of this matter are **dismissed with prejudice** because consideration of their merits is barred by the doctrine of anticipatory procedural default.

2. That pursuant to Rule 5 of the Rules Governing Section 2254 Cases, Respondent shall file an answer on or before **November 4, 2024** showing why the writ should not be granted based on the arguments in Grounds Two, Five, Six, Seven, and Nine of the operative second amended petition (Doc. 29) and attachments thereto, as well as the memorandum in support filed on March 25, 2024 (Doc. 10).

3. That the answer should address:

   a. The necessity for an evidentiary hearing on Grounds Two, Five, Six, Seven, and Nine as alleged in Petitioner's second amended petition;

   b. Whether the argument in Grounds Two, Five, Six, Seven, and Nine of the second amended petition is barred by a statute of limitations or any other procedural bar; and

   c. An analysis of Grounds Two, Five, Six, Seven, and Nine and any cases and supporting documents relied upon by Respondent in opposition to the same.

Respondent shall cause to be forwarded to this Court for examination and review the records and transcripts, if available, of the criminal proceedings complained of by Petitioner. If a direct appeal of the judgment and sentence of the trial court was taken by Petitioner, Respondent shall furnish the records, or copies thereof, of the appeal proceedings and any subsequent postconviction proceedings.

4. That upon the termination of the proceedings herein, the clerk of this Court will

return to the clerk of the proper state court all state court records and transcripts.

5.   That Petitioner be granted to and including **December 4, 2024** to file a traverse thereto, admitting or denying, under oath, all factual allegations therein contained.

6.   That the clerk of this Court then return this file to the undersigned for such other and further proceedings as may be appropriate; and that the clerk of this Court transmit copies of this order to Petitioner and to the office of the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:   This 4th day of October, 2024, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge